UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEAN ROBINSON,<br><br>      Plaintiff,<br>v.<br><br>MICHAEL S. HARRISON, Superintendent of the New Orleans Police Department; SERGEANT LAWRENCE JONES, New Orleans Police Department, DETECTIVE REUBEN HENRY, New Orleans Police Department, DETECTIVE ORLYNTHIA MILLER, New Orleans Police Department, COLONEL KEVIN W. REEVES, Superintendent of the Louisiana State Police, in their official capacities only,<br><br>      Defendants. | CIVIL ACTION<br><br>No: _____ |

## COMPLAINT

### PRELIMINARY STATEMENT

  Sean Robinson's picture, current address, and birthdate are listed on the sex offender registry. He has complied with the sex offender registration law by paying his $60.00 registration fee for 2017 and a fee of $193.50 to put a notice in the newspaper. He has updated the New Orleans Police Department ("NOPD") of his current address, obtained an identification card consistent with his sex offender status, secured housing despite his homelessness over the last five years, and finds work through a local temp agency. Since January he has earned $2505.00. His rent is $500.00 per month. He does not own a car. Yet, the NOPD will issue a warrant for his arrest on May 11 for noncompliance with the sex offender registration laws because he is unable to pay the $861.50 to send postcards to his neighbors. Despite the fact that he receives

1

government assistance, that he was declared indigent by a court in January, and that he lives below the federal poverty line, the NOPD will not defer or postpone his arrest despite doing so before, will not grant him a waiver of the fee despite his indigence and, in light of his bona fide efforts to pay and good faith compliance with many provisions of the sex offender law, will not issue him a summons rather than arrest him.

Sean Robinson's arrest without an evaluation of the willfulness of his nonpayment, will run afoul of the Due Process and Equal Protection clauses of the Fourteenth Amendment and the Probable Cause requirement of the Fourth Amendment.  Plaintiff's loss of liberty will inflict irreparable harm that will inhibit his efforts to make a stable life, find employment and fulfill other requirements of the sex offender registration law.  He requests Court intervention in the form of an injunction to prevent the NOPD from issuing a warrant for his arrest on May 11, 2018.  This complaint also raises an issue regarding whether the lack of a general fee waiver provision in the Louisiana Sex Offender Registration law for indigent persons who have paid some but not all fees runs afoul of the Fourth and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

1. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks redress for the deprivation of rights secured by the U.S. Constitution. Plaintiff's federal claims are brought under 42 U.S.C. § 1983.

2. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

3. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b).

## PARTIES

### Plaintiff Sean Robinson

4. Plaintiff, Sean Robinson, is a 31-year old resident of New Orleans, Louisiana.

5. Mr. Robinson was convicted of sexual battery in 2011 and consequently is required to register in accordance with the Louisiana sex offender statute, La. R.S. 15:541, *et seq*.

6. Mr. Robinson is indigent and was declared so by a court in January 2018. He receives $192 a month in food stamps and, based on his income, lives below the federal poverty level.

7. If he does not pay the $861.50 to send postcard notifications to his neighbors, the NOPD will issue a warrant for his arrest on May 11.

### Defendant Michael S. Harrison

8. Defendant Michael S. Harrison is the Superintendent of the New Orleans Police Department. He is sued in his official capacity only.

9. The New Orleans Police Department is responsible for enforcing the Louisiana sex offender law in New Orleans, including issuing warrants for registrants it has deemed non-compliant.

10. The New Orleans Police Department is the appropriate law enforcement agency with whom Plaintiff is required to register, pursuant to La. R.S. 15:542(B)(1).

### Defendant Sergeant Lawrence Jones

11. Defendant Sergeant Lawrence Jones is a detective with the New Orleans Police Department. He is the supervisor of Defendants Detective Reuben Henry and Detective Orlynthia Miller. He is sued in his official capacity only.

12. Sergeant Lawrence Jones supervises the two detectives – Detective Reuben Henry and Detective Orlynthia Miller – with whom Plaintiff has been reporting to for registration compliance.

### Defendant Detective Reuben Henry

13. Defendant Detective Reuben Henry is a detective with the New Orleans Police Department sex offender registration unit. He is sued in his official capacity only.

14. Plaintiff reports to Detective Henry for his registration and notification compliance and is one of the parties that determines whether Plaintiff is compliant.  He has threatened to issue a warrant for plaintiff on May 11.

### Defendant Detective Orlynthia Miller

15. Defendant Detective Orlynthia Miller is a detective with the New Orleans Police Department sex offender registration unit. She is sued in her official capacity only.

16. Plaintiff reports to Detective Miller for his registration and notification compliance and is one of the parties that determines whether Plaintiff is compliant.  She has threatened to issue a warrant for plaintiff on May 11.

### Colonel Kevin W. Reeves

17. Defendant Colonel Kevin W. Reeves is the Superintendent of the Louisiana State Police. He is sued in his official capacity only.

18. The Louisiana State Police is the state police department of Louisiana, and has jurisdiction anywhere in the state. It maintains Louisiana's sex offender registry.

### FACTUAL ALLEGATIONS

1. Plaintiff, Sean Robinson is a 31-year-old resident of New Orleans, Louisiana.

2. The State of Louisiana has required Mr. Robinson to register as a sex offender in accordance with the Louisiana sex offender statute as consequence of his conviction of sexual battery in 2011.

3. He received a sentence of five years probation and a five year suspended sentence.

4. Mr. Robinson was convicted of Failure to Register on April 14, 2014 and pled guilty to a second charge of Failure to Register on March 6, 2018.

5. Mr. Robinson served time in jail for failure to secure housing and pay fines and fees from 2011 to 2014. In 2014, he was sentenced to serve the remainder of his five-year suspended sentence from his 2011 sexual battery conviction.

6. Mr. Robinson was released from prison on August 5, 2017.

7. Mr. Robinson was homeless after his release from prison until he was able to obtain housing in January 2018.

8. Mr. Robinson is currently employed through a temp agency; therefore, his work is sporadic. Since January 1, 2018, he has earned $2505.00 in income. He has no other income, savings, or bank accounts.

9. Mr. Robinson started receiving Food Stamps in April. He received $128 in April and $192 for the month of May.

10. Mr. Robinson has made bona fide efforts to pay all fees towards compliance with the Louisiana sex offender statute. He has made partial payment of some but not all of the fees.

11. Mr. Robinson has paid the annual registration fee of $60 and a fee of $193.50 to put a notice in the newspaper, as required by the Louisiana sex offender statute. Moreover, Mr.

Robinson has attempted to fully comply with the community notification requirements by requesting additional time to pay the remaining balance of the fees.

12. Mr. Robinson's poverty prevents him from attaining full compliance. Despite evidence that his nonpayment is not willful, the NOPD will issue a warrant for his arrest on May 11. He will not have the opportunity to demonstrate full compliance.

13. Mr. Robinson has consistently reported to NOPD as required, registered his address, and submitted his landlord verification, aiding local law enforcement in investigating him, and enabling apprehension of him if necessary.

14. Mr. Robinson's first appointment after his March 6 conviction was with Det. Reuben Henry of the NOPD, on March 13. Mr. Robinson was unable to pay for the postcard notifications at that time. Det. Henry told Mr. Robinson he could see that he was making efforts to comply with the statute, and that his priority should be paying his rent so that he could stay in his home.

15. His next appointment was scheduled for April 3, 2018. On April 2, Mr. Robinson's attorney, Gwyneth O'Neill, called Det. Henry to ask about rescheduling the appointment. Mr. Robinson was called for a new job that he would have been forced to miss if he went to the April 3 appointment. Det. Henry agreed to reschedule the meeting for April 12.

16. To his April 12 appointment with NOPD Mr. Robinson brought a paralegal from the public defender's office, Annick Jordan. They both met with Det. Orlynthia Miller. Mr. Robinson informed Det. Miller that he still did not have the total funds to pay for his community postcard notifications, as required by the Louisiana sex offender statute. Det. Miller then made a phone call. Det. Miller informed the individual on the phone that she had a non-compliant sex offender registrant in her office and asked how she should

6

proceed with his case given the fact that he had not yet completed his postcard notifications within the 21 days required by the statute.

17. While Det. Miller was still on the phone, Ms. Jordan began to explain that Mr. Robinson had just secured stable housing and had brought his most recent paystub, in the amount of $100. Ms. Jordan also informed Det. Miller that Mr. Robinson had been working with Det. Henry who did not mention the risk of Mr. Robinson being arrested on that date.

18. Det. Miller stated that it was her job to arrest registrants who are not compliant with the statute, and since Mr. Robinson had not completed his postcard notifications, he was non-compliant. Det. Henry eventually came into Det. Miller's office and informed Mr. Robinson that he would not issue a warrant on that day. Det. Henry asked Mr. Robinson how much time he needed to complete the postcard notifications. Mr. Robinson was unsure of what to say and hesitantly said he could try to come up with the $861.50 in two weeks. Det. Henry then said he would give him four weeks, until May 11, 2018, to complete them. Mr. Robinson was not given a next appointment, but was told by Det. Henry that if he does not complete the postcard notifications by May 11, 2018, a warrant would be issued for his arrest on that day.

19. Mr. Robinson's financial circumstances have not changed. He is still indigent and unable to pay for his postcard notifications. As such, he faces imminent arrest. Despite his indigent status and the bona fide efforts made by Mr. Robinson to comply with the sex offender statute, the NOPD will issue a warrant for his arrest on May 11, 2018 if he is unable to come up with the $861.50 required to complete his community notification compliance. NOPD is well aware of Plaintiff's financial situation and of his inability to pay.

20. NOPD is aware of the constitutional requirements it must adhere to, namely, that it is unlawful to arrest registrants who cannot pay the requisite fees despite their bona fide efforts to pay and who are otherwise compliant with the registration and notification requirements.

21. On June 8, 2017, Orleans Public Defenders ("OPD") sent a letter to NOPD Superintendent Michael Harrison demanding an end to the practice of arresting individuals who are unable to complete their sex offender registration requirements because of their indigency, when they are making good faith efforts to comply. In this letter, OPD clearly outlined the constitutional requirements NOPD is required to adhere to and how current NOPD practices violate clearly established constitutional rights. In his response to the letter, Superintendent Harrison indicated that upon receipt of a court determination of indigency his department would cease enforcement of the sex offender registration requirements for a certain offender.

22. On May 4, 2018, the undersigned sent a letter to Superintendent Harrison that read in full:

> [Sean Robinson] faces an impending May 11 arrest for failure to register as a sex offender in spite of the fact that he is too poor to pay all of the registration fees. He has paid the annual registration fee and the newspaper announcement but cannot afford the $861.50 to pay for the postcard notifications. The enclosed minute entry demonstrates that Mr. Robinson was declared indigent by a judge in Criminal District Court on January 3, 2018. He was homeless until January of this year, receives food stamps and can barely afford his $500 monthly rent. …He simply cannot afford to pay the remaining registration fees.
>
> Your department has stated its intent to issue a warrant for Robinson's arrest on May 11 should Mr. Robinson not fulfill all of the registration fees by that time. In the enclosed August 2, 2017 letter, you indicated that upon receipt of a court determination of indigency you would cease enforcement of the sex offender registration requirements for a certain offender. I am requesting that you waive the remaining postcard fee for Mr. Robinson or issue him a citation for failure to register as an alternative to arrest.

Superintendent Harrison has not responded as of the filing of this complaint.

23. On May 11, 2018, NOPD will issue a warrant for Plaintiff's arrest despite its knowledge that Mr. Robinson is indigent and despite the fact that he has made bona fide efforts to comply with his registration and notification requirements. Absent a temporary restraining order or an injunction from this Court, Mr. Robinson faces imminent arrest.

24. The Louisiana sex offender statute imposes burdensome requirements on persons convicted of registerable sex offenses and of Failure to Register, *see* La. R.S. 15:542 *et seq*, including exorbitant fees associated with registration and notification compliance. La. R.S. 15: 542; 15:542.1.

25. A person convicted of a registerable offense must provide "notice of the crime for which he was convicted, his name, residential address, a description of his physical characteristics . . . and a photograph or copy thereof," La. R.S. 15:542.1, to various superintendents of various city services and, most importantly, "at least one person in every residence or business within …a three-tenths of a mile radius in an urban or suburban area of the address of the residence where the offender will reside." La. R.S. 15:542.1(A)(1)(a). This notification must be repeated every five years and every time a registrant changes address. La. R.S. 15:542.1(A)(2)(b). Further, depending on the nature of his underlying offense, a registrant must update his registration every three months, six months, or annually. La. R.S. 15:542.1.1(A)(1)–(3). Homeless registrants must update their registration, in person, every 14 days. *Id.*

26. Along with registration and notification requirements, come burdensome financial obligations. Among other requirements, registrants are expected to pay an annual registration fee of $60. La. R.S. 15:542(D). Failure to pay the annual $60 fee within thirty

days of a registrant's initial registration can result in a Failure to Register charge. *Id.* Notification requirements require registrants to place an advertisement in the local newspaper about their status as a sex offender registrant, which costs nearly $200. La. R.S. 15:542.1. Registrants are also required to send postcards notifying neighbors of their status as sex offenders to every residence or business within a one-mile radius in a rural area and a three-tenths of a mile radius in an urban or suburban area of the address of the residence where the registrant resides. *Id.* This costs registrants hundreds of dollars. Registrants are given twenty-one days from release from custody to comply with these notification requirements and are subject to failure to register charges if they fail to do so. *Id.* The cost of registration and notification compliance frequently runs over $1,000, a sum of money beyond the means for someone in Mr. Robinson's shoes.

27. Providing a system for waiving some of the registration fees would not burden the state or law enforcement. Other statues have provisions for waiving registration fees in cases where an indigent registrant's non-payment is not willful. *See* K.S.A. 22-4905(l)(3) (Kansas) (providing an exception for offenders who cannot afford a $20 registration fee that applies when, "prior to the required reporting and within the last three years, [the offender has] been determined to be indigent by a court of law, and the basis for that finding is recorded by the court.") *See also* Ala. Code 1975 §15-20A-22(c).

28. Also, the NOPD has previously granted two payment extensions to Mr. Robinson. *See supra* ¶¶ 14-15, 17-18. Louisiana sex offender law already allows for a waiver for indigency, though it only applies to the annual registration fee pursuant and must be done in accordance with the local rules regarding indigency adopted by the local district judges. *See* La. R.S. 15:542(D).

29. The private interest – loss of liberty – is undoubtedly high as is the risk of erroneous deprivation. If Mr. Robinson is arrested without an inquiry into his indigency, and is later deemed indigent by the trial court, after arrest, he will have already spent days and months in custody, and will have likely lost his housing.

30. Mr. Robinson was declared indigent by a district court in January 2018. He receives government assistance, via food stamps, and lives below the federal poverty level. According to the indigency requirements for people charged with crime, this is prima facie evidence that he is indigent. *See* La. R.S. 15:175(b).

31. Finally, if Mr. Robinson were a wealthy person, he would not be in danger of arrest. Paying $1,000 towards fulfillment of a fee is not much of an imposition to a monied person. However, this amounts to a substantial portion of Mr. Robinson's income. That arrest and jail is the penalty for the poor person creates a situation where a fine is converted into a jail term that is forbidden by the Equal Protection Clause. *Tate v. Short*, 401 U. S. 395 (1971); *Williams v. Illinois*, 399 U.S. 235 (1970). Moreover, a jail sentence is never a rational and necessary trade-off to punish the individual who possesses no accumulated assets. Williams v. Illinois, 399 U.S. at 265 (Harlan, J., concurring). Rather, it is a "contrary to the fundamental fairness required by the Fourteenth Amendment." *Bearden v. Georgia*, 461 U.S. 660, 673 (1983).

**CLAIMS FOR RELIEF**

32. Under 42 U.S.C. § 1983, state actors are liable at law or equity for their acts or omissions undertaken under color of law which deprive any person of the rights secured by the Constitution and laws of the United States.

33. Defendants are state actors and, at all times relevant to this Complaint, were acting and are acting under color of law.

## COUNT I: VIOLATION OF THE
## DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

34. Arresting Plaintiff for failure to comply with the sex offender registration and notification requirements without evaluating his ability to pay violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

35. Louisiana Revised Statute 15:141 *et seq* violates Mr. Robinson's right to procedural due process under the Fourteenth Amendment, in that it requires that he be imprisoned for failure to pay the fees associated with registration and notification compliance without a hearing or an opportunity to demonstrate that his inability to pay the fees is not willful.

36. Louisiana's wealth-based registration scheme, La. R.S. 15:541, *et seq.* is unconstitutional as applied to Mr. Robinson because it violates Plaintiff's substantive Due Process rights by infringing upon fundamental fairness.  *Bearden*, 461 U.S. at 673.

## COUNT II: VIOLATION OF THE
## EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

37. Arresting Plaintiff for failure to comply with the sex offender registration and notification requirements without evaluating his ability to pay violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

38. Louisiana's wealth-based registration scheme, La. R.S. 15:541, *et seq.* is unconstitutional as applied to Mr. Robinson because it violates Plaintiff's substantive Due Process and Equal Protection rights by infringing upon fundamental fairness.

## COUNT III: VIOLATION OF THE
## THE FOURTH AMENDMENT'S PROBABLE CAUSE REQUIREMENT

39. Plaintiff is indigent and has made bona fide efforts to comply with his registration and notification requirements.

40. Because state and federal case law require proof of an intentional failure to pay before a person can be incarcerated for a financial debt, there is no probable cause to arrest Plaintiff for failure to register as a sex offender.

41. Plaintiff's imminent arrest for failure to register would be unlawful under the Fourth Amendment to the United States Constitution.

## Lack of Legal Remedy

42. The Plaintiff's harm can only be alleviated by injunctive relief. No other remedy is available at law.

## Request for Relief

Wherefore, the Plaintiff requests that this Court:

a. Issue a temporary restraining order and/or preliminary injunction barring the Defendants from arresting Plaintiff for failure to pay sex offender registration notification fees;

b. Issue a temporary restraining order and/or preliminary injunction requiring the recall of any already issued warrants related to Plaintiff's failure to pay sex offender registration notification fees.

c. Issue a permanent injunction barring the Defendants from arresting Plaintiff for failure to pay sex offender registration notification fees;

d. Issue a permanent injunction requiring the recall of any already issued warrants related to Plaintiff's failure to pay sex offender registration notification fees.

e. Issue a declaratory judgment that the lack of a general fee waiver provision in the Louisiana Sex Offender Registration law for indigent persons who have paid some but not all fees is unconstitutional according to the Fourth and Fourteenth Amendments to the United States Constitution.

f. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the state of Louisiana and its agencies cannot arrest indigent registrants who have made bona fide efforts to comply with the sex offender statute.

g. Award attorney fees and costs to plaintiff in accordance with 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

h. Grant such other relief as the Court finds just and proper.

**Filed**: May 8, 2018

Respectfully submitted,

*/s/ Colin Reingold*____
Louisiana Bar No. 33252
Orleans Public Defenders
2601 Tulane Ave, Suite 700
New Orleans, LA 70119
(504) 827-8220 (direct)
(504) 931-4866 (mobile)
creingold@opdla.org

  */s/ John Adcock*_____
JOHN ADCOCK
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 70119
(504) 233-3125 (work)
(504) 283-6327 (mobile)
(504) 308-1266 (fax)
Email:  jnadcock@gmail.com

*Attorneys for Plaintiff*