# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SEAN ROBINSON, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| v. | ) |
| | ) No: 18-cv-4733 |
| MICHAEL S. HARRISON, Superintendent of | ) |
| the New Orleans Police Department, and | ) SECTION: [**Not yet allotted**] |
| SERGEANT LAWRENCE JONES, New | ) |
| Orleans Police Department, DETECTIVE | ) |
| REUBEN HENRY, New Orleans Police | ) |
| Department, and DETECTIVE ORLYNTHIA | ) |
| MILLER, New Orleans Police | ) |
| Department, and COLONEL KEVIN W. | ) |
| REEVES, Superintendent of the Louisiana | ) |
| State Police, in their official capacities, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF MOTION FOR ENTRY OF A TEMPORARY
### RESTRAINING ORDER AND PRELIMINARY INJUNCTION

NOW COMES Sean Robinson ("Plaintiff"), through undersigned counsel, and respectfully files this Memorandum in Support of his Motion for Entry of a Temporary Restraining Order and Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65.

## I.   INTRODUCTION

Sean Robinson's picture, current address, and birthdate are listed on the sex offender registry.[1] He has complied with the sex offender registration law by paying his $60.00 registration fee for 2017 and a fee of $193.50 to put a notice in the newspaper. He has updated the New Orleans Police Department ("NOPD") of his current address, obtained an identification

---

[1] *See* http://www.icrimewatch.net/offenderdetails.php?OfndrID=1491876&AgencyID=54320 (last visited May 8, 2018).

card consistent with his sex offender status, secured housing despite his homelessness over the last five years, and finds work through a local temp agency. He has attended every meeting scheduled with the NOPD. Since January he has earned $2505.00. His rent is $500.00 per month. He does not own a car.  Yet, the NOPD will arrest him on May 11 for noncompliance with the sex offender registration laws because he is unable to pay the $861.50 to send postcards to his neighbors within a three-tenths of a mile radius of his residence.  La. R.S. 15:542.1.

Despite the fact that he receives government assistance, that he was declared indigent by a court in January, and that he lives below the federal poverty line, the NOPD will not defer or postpone his arrest despite doing so before, will not grant him a waiver of the fee despite his indigence and, will not issue him a summons rather than arrest him despite his bona fide efforts to pay and good faith compliance with many provisions of the sex offender law.

Federal law requires an indigency determination before incarcerating individuals for failure to pay financial debts. *Bearden v. Georgia*, 461 U.S. 660 (1983); *Tate v. Short*, 401 U.S. 395 (1971). Louisiana's highest court envisions an exception to paying the registration fees for indigent sex offender registrants. *State v. Jones*, 17-017 (La. 1/13/17) 206 So. 3d 871. NOPD Superintendent Harrison has indicated that upon receipt of a court determination of indigency his department would cease enforcement of the sex offender registration requirements for a certain offender.  *See* Exhibit A. Despite Mr. Robinson doing so, *see* Exhibit B, the threat of a May 11 arrest warrant stands.

 Arresting Mr. Robinson unconstitutionally converts a fee into a jail term without regard for the reason for nonpayment.  Cf. *Tate v. Short*, 401 U. S. 395 (1971) (holding that a State cannot convert a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full). Consequently, without this court's intervention, Plaintiff will be arrested simply because he is too poor to pay all of the fees associated with registration and notification compliance. Mr. Robinson will be stuck in jail,

1

perhaps for months, before he is given an opportunity to explain his inability to pay. In the meantime, he will lose the stable housing he has worked for months to secure, further decrease his ability to find full time employment, and be unable to earn money to pay the $861.50 to comply with the sex offender registration laws.

## II.   BACKGROUND AND FACTS

### A.   *Mr. Robinson's history of homelessness*

Plaintiff, Sean Robinson is a 31-year-old resident of New Orleans, Louisiana. Exhibit C, at ¶ 1. The State of Louisiana has required Mr. Robinson to register as a sex offender in accordance with the Louisiana sex offender statute. *See* La. R.S. 15:542 *et seq*. Mr. Robinson has a long history of imprisonment due to his status as an indigent sex offender registrant. *See* Exhibit G.

Since 2011, Mr. Robinson has spent most of his time in prison or jail. *Id*. On October 5, 2011, he received a 5-year suspended sentence with 5 years of active probation for pleading guilty to second-degree battery and sexual battery. Exhibit D, at 3. As a result of this conviction, he was assessed a total of $1,191.50 in court costs and fees. *Id.* The sentencing court ordered him to comply with probation by paying his fees and finding proper housing – two conditions that are undoubtedly difficult for convicted felons to meet, particularly for registered sex offenders. *Id.,* at 3, 5.

On November 30, 2012, after a number of probation status hearings where Mr. Robinson was unable to show the court that he had obtained housing, the Court put him in jail for not finding proper housing, putting him in violation of his probation conditions. Exhibit D, at 5. On December 17, Mr. Robinson was released under a court order that he remain at the New Orleans Mission until he was able to obtain permanent housing. *Id.* at 6. Over the next few months, Mr. Robinson continued to look for housing, but was unable to find any. Exhibit D, at 5, 6.

On May 3, 2013, Mr. Robinson was arrested for a charge of Failure to Register with the Sex Offender Registry, pursuant to La. R.S. 15:542.1.2 (duty of offenders to notify law enforcement of change of address, residence or other registration information) and 15:542.1.4(A)(3) (failure to pay the annual registration fee). Exhibit F. He made bond and was released from custody. He returned to court on May 6, 2013 where he was required to make a payment and bring a letter to court demonstrating probation compliance with his original 2011 conviction - that he had found housing and paid his fees. Since he was homeless and had no money for fees, the court gave him an extension until May 13. Exhibit D, at 7. When he returned to court on that date, the court put Mr. Robinson in jail and set a hearing on a rule to show cause to revoke his probation for May 16. *Id.*

Mr. Robinson's probation was ultimately revoked on June 12, 2014, and he was required to serve the rest of his original five year sentence for the 2011 sexual battery conviction. Exhibit D, at 8. On August 19, 2016, the court suspended the balance of his fines and fees. Exhibit E, at 6. Mr. Robinson was in jail from June 2014 until he was released from DOC custody on August 5, 2017. Exhibit G, at 2.

When he was released from prison he was homeless and remained homeless before he was able to obtain stable housing in January 2018. Exhibit C, at ¶ 4. During the same month, Mr. Robinson was again charged with failure to register as a sex offender.  At his January 3, 2018 arraignment, a judge declared him indigent. Exhibit H. On March 6, 2018, Mr. Robinson pled guilty to Failure to Register. Exhibit I. At that time, he still needed to complete his postcard notifications and pay the $60 annual registration fee, though he had paid $193.50 for the newspaper ad in the Times Picayune.[2] Exhibit J.

---

[2] Mr. Robinson is not able to say with certainty when he paid certain fees associated with the sex offender registry primarily because the NOPD insists on a subpoena before it will turn over his file to him or his legal team.  See Exhibit K, Annick Jordan Affidavit, at ¶ 14.

Mr. Robinson currently finds work though a temp agency. Since he found an apartment in January, he has earned $2,505.00 in wages from his part-time job. Exhibit L. He has no other income, savings, or bank accounts. Mr. Robinson started receiving Food Stamps in April. Exhibit M. He received $128 in April and $192 for the month of May. *Id*. He pays $500 a month in rent. In April, Mr. Robinson only made $470 and was therefore unable to pay the entirety of his rent. Exhibit L. He has managed to pay $150.00 out of $254.50 in fees for his March 2018 conviction. Exhibit N.  Mr. Robinson is unable to pay the fees associated with notification compliance.

2.      *Mr. Robinson begins the registration process with the NOPD.*

Robinson's first appointment after his March 6 conviction was with Detective Reuben Henry of the New Orleans Police Department, on March 13. Exhibit C, at ¶ 11. Mr. Robinson was unable to pay for the postcard notifications at that time. Det. Henry told Mr. Robinson he could see that he making efforts to comply with the statute, and that his priority should be paying his rent so that he could stay in his home. *Id.*

His next appointment was scheduled for April 3, 2018. On April 2, Mr. Robinson's attorney, Gwyneth O'Neill, called Det. Henry to ask about rescheduling the appointment. Exhibit C, at ¶ 12. Mr. Robinson was called for a new job that he would be forced to miss if he went to the April 3 appointment. Det. Henry agreed to reschedule the meeting for April 12. *Id.*

To his April 12 appointment with NOPD Mr. Robinson brought a paralegal from the public defender's office, Annick Jordan. Exhibit C, at ¶ 13; Exhibit K, at  ¶ 3. They both met with Detective Orlynthia Miller. Mr. Robinson informed Det. Miller that he still did not have the funds to pay the entirety of the fee for his community postcard notifications, as required by the Louisiana sex offender statute. *Id.* Det. Miller then made a phone call. Exhibit K, at  ¶ 3. Det. Miller informed the individual on the phone that she had a non-compliant sex offender registrant in her office and asked how she should proceed with his case given the fact that he had not yet completed his postcard notifications within the 21 days required by the statute. Exhibit K, at  ¶ 3.

4

While Det. Miller was still on the phone, Ms. Jordan began to explain that Mr. Robinson had just secured stable housing and had brought his most recent paystub, in the amount of $100. Exhibit C, at ¶ 14, Exhibit K, at  ¶ 4. Ms. Jordan also informed Det. Miller that Mr. Robinson had been working with Det. Henry who did not mention the risk of Mr. Robinson being arrested on that date. Exhibit K, at  ¶ 5.

Det. Miller stated that it was her job to arrest registrants who are not compliant with the statute, and since Mr. Robinson had not completed his postcard notifications, he was non-compliant. Exhibit C, at ¶ 14; Exhibit K, at  ¶ 5.  Det. Henry eventually came into Det. Miller's office and informed Mr. Robinson that he would not issue a warrant on that day. Exhibit C, at ¶ 15; Exhibit K, at  ¶ 6. Det. Henry asked Mr. Robinson how much time he needed to complete the postcard notifications. Mr. Robinson was unsure of what to say and hesitantly said he could try to come up with the $861.50 in two weeks. Exhibit K, at  ¶ 6. Det. Henry then said he would give him four weeks, until May 11, 2018, to complete them. *Id*. Mr. Robinson was not given a next appointment, but was told by Det. Henry that if he does not complete the postcard notifications by May 11, 2018, a warrant would be issued for his arrest on that day. Exhibit C, at ¶ 16; Exhibit K, at  ¶ 7.

Mr. Robinson's financial circumstances have not changed. Exhibit C, at ¶ 17. He is still indigent and unable to pay for his postcard notifications. As such, he faces imminent arrest. Despite his indigent status and the bona fide efforts made by Mr. Robinson to comply with the sex offender statute, the NOPD will issue a warrant for his arrest on May 11, 2018 if he was unable to come up with the $861.50 required to complete his community notification compliance. NOPD is well aware of Plaintiff's financial situation and of his inability to pay. *See* Exhibit B.

3.  *After NOPD declines to issue a waiver unless a registrant has been declared indigent by a court, they refuse to issue a waiver for Mr. Robinson when he furnishes such information.*

5

NOPD is aware of the constitutional requirements it must adhere to, namely, that it is unlawful to arrest registrants who cannot pay the requisite fees despite their bona fide efforts pay and were otherwise compliant with the registration and notification requirements.

On June 8, 2017, Orleans Public Defenders ("OPD") sent a letter to NOPD Superintendent Michael Harrison demanding an end to the practice of arresting individuals who are unable to complete their sex offender registration requirements because of their indigency, when they are making good faith efforts to comply. *See* Exhibit O. In this letter, OPD clearly outlined the constitutional requirements NOPD is required to adhere to and how current NOPD practices violate clearly established constitutional rights. In his response to the letter, Superintendent Harrison indicated that upon receipt of a court determination of indigency his department would cease enforcement of the sex offender registration requirements for a certain offender. *See* Exhibit A.

On May 4, 2018, the undersigned sent a letter to Superintendent Harrison that read in full:

> [Sean Robinson] faces an impending May 11 arrest for failure to register as a sex offender in spite of the fact that he is too poor to pay all of the registration fees. He has paid the annual registration fee and the newspaper announcement but cannot afford the $861.50 to pay for the postcard notifications. The enclosed minute entry demonstrates that Mr. Robinson was declared indigent by a judge in Criminal District Court on January 3, 2018. He was homeless until January of this year, receives food stamps and can barely afford his $500 monthly rent. Federal and state laws prohibit housing assistance to persons on the sex offender registry. He simply cannot afford to pay the remaining registration fees.
>
> Your department has stated its intent to issue a warrant for Robinson's arrest on May 11 should Mr. Robinson not fulfill all of the registration fees by that time. In the enclosed August 2, 2017 letter, you indicated that upon receipt of a court determination of indigency you would cease enforcement of the sex offender registration requirements for a certain offender. I am requesting that you waive the remaining postcard fee for Mr. Robinson or issue him a citation for failure to register as an alternative to arrest.

Exhibit B. Superintendent Harrison has not responded.

6

On May 11, 2018, NOPD will issue a warrant for Plaintiff's arrest despite its knowledge that Mr. Robinson is indigent and despite the fact that he has made bona fide efforts to comply with his registration and notification requirements. Absent a temporary restraining order or an injunction from this Court, Mr. Robinson faces imminent arrest.

### B.      Louisiana's sex offender registration fees.

The Louisiana sex offender statute imposes burdensome requirements on persons convicted of registerable sex offenses and of Failure to Register, *see* La. R.S. 15:542 *et seq*, including exorbitant fees associated with registration and notification compliance. La. R.S. 15:542.1.

A person convicted of a registerable offense must provide "notice of the crime for which he was convicted, his name, residential address, a description of his physical characteristics . . . and a photograph or copy thereof," La. R.S. 15:542.1, to various superintendents of various city services and, most importantly, "at least one person in every residence or business within …a three-tenths of a mile radius in an urban or suburban area of the address of the residence where the offender will reside." La. R.S. 15:542.1(A)(1)(a). This notification must be repeated every five years and every time a registrant changes address. La. R.S. 15:542.1(A)(2)(b). Further, depending on the nature of his underlying offense, a registrant must update his registration every three months, six months, or annually. La. R.S. 15:542.1.1(A)(1)–(3). Homeless registrants must update their registration, in person, every 14 days. *Id.*

Along with registration and notification requirements, come burdensome financial obligations. Among other requirements, registrants are expected to pay an annual registration fee of $60. La. R.S. 15:542(D). Failure to pay the annual $60 fee within thirty days of a registrant's initial registration can result in a Failure to Register charge. *Id.* Notification requirements require registrants to place an advertisement in the local newspaper about their status as a sex offender registrant, which costs nearly $200. La. R.S. 15:542.1. Registrants are also required to send

7

postcards notifying neighbors of their status as sex offenders to every residence or business within a one-mile radius in a rural area and a three-tenths of a mile radius in an urban or suburban area of the address of the residence where the registrant resides. *Id.* This costs registrants hundreds of dollars. Registrants are given twenty-one days from release from custody to comply with these notification requirements and are subject to failure to register charges if they fail to do so. *Id.* The cost of registration and notification compliance frequently runs over $1,000, a sum of money beyond the means for someone in Mr. Robinson's shoes.

### III.   ARGUMENT

#### A.   THIS COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION BARRING DEFENDANTS FROM ARRESTING MR. ROBINSON.

In ruling on a motion for a preliminary injunction, a district court must consider the following factors:

1. The likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim;

2. whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief;

3. the probability that granting the injunction will cause substantial harm to others; and

4. whether the public interest is advanced by the issuance of the injunction.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).  The same factors apply to a motion for a temporary restraining order. *Garcia v. U.S.*, 680 F.2d 29, 31 (5th Cir. 1982).

In determining whether to grant a request for a temporary restraining order, courts in the Fifth Circuit weigh the hardships associated with the issuance or denial of a preliminary injunction against the degree of likelihood the plaintiff will succeed on the merits.  Applying this sliding scale, a plaintiff who establishes a strong showing of likelihood of success on the merits

has less of a burden of establishing likelihood of irreparable harm.  *See Canal Auth. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).  Plaintiff here makes a good case for both.

Mr. Robinson requests that this Court enjoin Defendants from arresting or issuing a warrant for Mr. Robinson for four reasons: (1) Plaintiff is highly likely to succeed on the merits of his claim, because penalizing him for failure to comply with the sex offender registration and notification requirements without evaluating his ability to pay violates federal law; (2) without injunctive relief Plaintiff will be deprived of his liberty and suffer irreparable harm; (3) an injunction will not harm Defendants because arrest for failure to register does not increase the likelihood that registrants who cannot pay their full amount of fees associated with registration and notification compliance will do so; and (4) the injunction will serve the public interest because it will prevent the unlawful arrest of a registrant solely because of his indigency. Moreover, the public interest is always served when the government and its agencies abide by the tenets of the Constitution.

## A.  MR. ROBINSON IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff is likely to succeed on the merits. Louisiana violates Mr. Robinson's constitutional rights under the Due Process and Equal Protection Clauses by enforcing a statutory scheme requiring punishment and imprisonment of registrants solely because they do not have the financial resources to fully comply with the registration and notification requirements. It also violates Plaintiff's procedural Due Process rights because it allows for the arrest of registrants for failure to register without an indigency determination to assess their financial ability to fully comply with the registration and notifications requirements.

### a.  The Louisiana sex offender statute, as applied to Mr. Robinson, is unconstitutional because it violates Plaintiff's procedural Due Process rights.

An ability-to-pay determination is required before Mr. Robinson can be deprived of his liberty. The Constitution requires a hearing before the State can deprive a person of life, liberty

or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). A main principle of Due Process is that a deprivation of liberty be *preceded* by notice and opportunity for hearing. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Jabary v. City of Allen*, 547 Fed. Appx. 600 (5th Cir. 2013). Even if failure to pay is undisputed, the debtor must be given an opportunity to be heard if he contends he cannot afford to pay. *Bearden*, 461 U.S. at 672.

Due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In determining what process is due, there are three distinct interests to be considered: (1) the private interest affected; (2) the risk of erroneous deprivation; and (3) the government's interest. *Id.* at 321.

### 1. *The private interest is significant.*

The *Mathews* balancing test clearly weighs in Mr. Robinson's favor. The private interest that will be affected is significant – Mr. Robinson will be arrested and taken to jail pending his failure to register charge and any hearing by the trial court with respect to his indigency determination. As a third time offender, Mr. Robinson faces a possible sentence of five to 20 years. La. R.S. 15:542.1.4.  Mr. Robinson' interest in securing his freedom "from bodily restraint" lies at the core of his Due Process rights. *Turner v. Rogers*, 564 U.S. 431, 131 S.Ct. 2507, 2518 (2011) (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "[I]ts threatened loss through legal proceedings demands "due process protection." *Id*. (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).

In addition to losing his liberty, other important private interests are at stake.  Since Mr. Robinson will not be earning money in jail, he cannot pay rent and therefore runs the risk of eviction.  Of course, being in jail provides another obstacle to his ability to pay the registration fees that landed him in the jail in the first place.  He would be in a deeper hole than before he was arrested.  Furthermore, without housing when he is released, he will then have a doubly hard time finding employment and staying out of jail.  *See* C. Wagner, "The Good Left Undone: How

to Stop Sex Offender Laws from Causing Unnecessary Harm at the Expense of Effectiveness,"
38 Am. J. Crim. L. 263 (2011), pp. 267-274; *Smith v. Doe*, 538 U.S. 84, 109 (Thomas, J.,
concurring) (describing the nature of registration and community notification that carry
"consequences, such as exclusion from jobs or housing, harassment, and physical harm."). The
consequences of going to jail will inflict a significant detrimental injury to Mr. Robinson's
private interests. *Accord Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) ("the possible length of
wrongful deprivation of . . . benefits [also] is an important factor in assessing the impact of
official action on the private interests.")

> *2. The risk of erroneous deprivation.*

"Given the importance of [the loss of liberty] at stake, it is obviously important to assure
accurate decisionmaking in respect to the key 'ability to pay" question.'" *Turner*, 564 U.S. 431,
131 S.Ct. at 2518. The risk of erroneous deprivation of such an interest is high. If Mr. Robinson
is arrested without an inquiry into his indigency, and is later deemed indigent by the trial court,
after arrest, he will have already spent days and months in custody, and will have likely lost his
housing. See *Mathews*, 424 U.S. at 331-332. Indeed, Mr. Robinson was declared indigent in
January 2018. Exhibit H. Moreover, that he receives government assistance, via food stamps, is
prima facie evidence that he is indigent. See La. R.S. 15:175(b) ("A person will be deemed
'indigent' who is unable, without substantial financial hardship to himself or to his dependents,
to obtain competent, qualified legal representation on his own. 'Substantial financial hardship' is
presumptively determined to include all defendants who receive public assistance, such as Food
Stamps…). Therefore, should there be an indigency determination down the line, Mr. Robinson
will in all likelihood be declared indigent.[3] Jailing him now, without an inquiry into his

---

[3] Should Mr. Robinson have such a hearing after he is in jail, he is incarceration would grant him a presumption of
indigence in addition to the fact that he receives public assistance.  La. R.S. 15:175(b).

indigency or an acknowledgement of a recent indigency determination by the trial court surely mitigates in favor of providing a hearing.[4]

It is important to note here that the sex offender registry is not considered criminal punishment but rather is a regulatory scheme that is civil in nature. *Smith v. Doe*, 538 U.S. 84 (2003). However, should the NOPD arrest Mr. Robinson, it will transform this proceeding into a criminal matter.   A court may not impose punishment "in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." *Hicks v. Feiock*, 485 U.S. 624, 638, n. 9 (1988). As the Supreme Court recently said:

> Moreover, the fact that ability to comply marks a dividing line between civil and criminal contempt, *Hicks*, 485 U.S., at 635, n. 7, 108 S.Ct. 1423, reinforces the need for accuracy. That is because an incorrect decision (wrongly classifying the contempt proceeding as civil) can increase the risk of wrongful incarceration by depriving the defendant of the procedural protections (including counsel) that the Constitution would demand in a criminal proceeding.

*Turner*, 564 U.S. 431, 131 S.Ct. at 2518.

It is unreasonable then to expose Mr. Robinson, who is unable to pay the fees associated with registration, to criminal sanctions and deprivation of liberty without due process. The deprivation of liberty based solely on inability to pay is undoubtedly punitive. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).   Hence, Due Process should attach to determinations of whether registrants are violating the law when their violation is due to their poverty rather than a willful refusal to pay.

### 3. *The government's interest*.

The government's interest also weighs in Mr. Robinson's favor. It would not be fiscally or administratively burdensome for NOPD to assess Mr. Robinson's indigency and then act in

---

[4] Moreover, Louisiana courts presume that an individual who cannot afford counsel and who is therefore represented by a public defender, is indigent with respect to their ability to pay fines. *See State v. Williams*, 288 So. 2d 319, 321 (La. 1974). Given that the public defender's office has previously been appointed in Mr. Robinson's case, he has already been deemed indigent by the trial court, most recently on January 3, 2018. *See* Exhibit F. NOPD has all of the information it needs to deem Mr. Robinson indigent.

accordance with the law.  This factor should take into account that other states provide some time of fee waivers and indigency hearings with regard to payment of fees on their sex offender registries.  In Kansas, for instance, there is an exception for offenders who cannot afford a $20 registration fee that applies when, "prior to the required reporting and within the last three years, [the offender has] been determined to be indigent by a court of law, and the basis for that finding is recorded by the court." K.S.A. 22-4905(l)(3). *See also* Ala. Code 1975 §15-20A-22(c) ($10 registration fee waived if the registrant has an order from the court declaring his or her indigence; if the registrant is deemed indigent by the sentencing court, nothing in the registration statute can prohibit the registrant from being placed on a payment plan.).

Similar to Louisiana, in many states the law enforcement agency can make the determination.  730 ILCS 150/3-c(6) (Illinois) (the law enforcement agency having jurisdiction may waive the registration fee if it determines that the registrant is indigent and unable to pay the registration fee.); I.C.A. § 692A.110 (Iowa) (if the registrant is unable to pay the fees, the sheriff may allow the registrant time to pay the fee, permit the payment of the fee in installments, or may waive payment of the fee). The sheer number of states that allow for indigent waivers indicates there is no burden on state actors to provide such a hearing.  Moreover, the Louisiana sex offender registration law allows for a waiver.

Furthermore, the NOPD has given registrants additional time to come up with the funds necessary to pay their registration and notification fees. Indeed, it did so twice with Mr. Robinson.  Rather than arrest him when he had not fulfilled his requirements within 21 days of his initial registration, as it could do by law, the NOPD gave him an additional eight weeks to comply. That NOPD has done so in the past indicates that doing so for impecunious registrants should not be a weighty obligation.

In scenarios similar to this one, the law allows for a pre-deprivation indigency determination before jailing someone for not paying a fee. *See Bearden v. Georgia*, 461 U.S. 660

(1983) (holding probationer entitled to indigency determination before automatic probation revocation for failure to pay a fine); *Tate v. Short*, 401 U.S. 395 (1971) (finding it a denial of equal protection to convert a traffic fine to imprisonment for those who are unable to pay solely because of indigency); *accord Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (holding probationer entitled to a hearing before revocation because although a probation hearing is not part of the criminal prosecution process it could cause the defendant to suffer a substantial loss of liberty, and therefore the defendant has the right to due process).

The purpose of the sex offender registration law is to protect communities, aid law enforcement in investigating sex offenders, and enable the quick apprehension of sex offenders. La. R.S. 15:540.  *See also State ex rel. Olivieri*, Nos. 2000-0172, 2000-1767 (La. 2/21/01), 779 So.2d 735, 747. The arrest of indigent registrants like Mr. Robinson, however, runs counter to the purpose of the sex offender registry.  Indeed, were Mr. Robinson to spend 45 days in jail before the state brings formal charges, *see* La. C. Cr. P. art. 701(B)(state can wait up to 45 days after arrest to file an indictment or information on misdemeanors charges), at a costs of roughly $24.39 per day, the State would spend $1,097.55 to keep him in jail.  That exceeds the amount Mr. Robinson owes the state ($861.50) by $236.05.  *Cf. State v. Jones*, 15-0500, pp. 6-7 (La.App. 5th Cir. 12/23/15), 182 So.3d 1218, 1225-26 (Wicker, J., dissenting).  *See also Bearden*, 461 U.S. at 670-671 ("Revoking the probation of someone who through no fault of his own is unable to make restitution will not make restitution suddenly forthcoming. Indeed, such a policy may have the perverse effect of inducing the probationer to use illegal means to acquire funds to pay in order to avoid revocation.")

Mr. Robinson's actions have satisfied the legislative goals of Louisiana's sex offender statute. Mr. Robinson has consistently reported to NOPD as required, registered his address, and submitted his landlord verification, aiding local law enforcement in investigating him, and enabling apprehension of him if necessary. Moreover, Mr. Robinson has paid some fees

14

associated with registration and notification compliance, and has attempted to fully comply with the community notification requirements by requesting additional time to pay the remaining balance of the fees. Mr. Robinson has been denied the opportunity to demonstrate full compliance simply because he cannot afford to be fully compliant.

### b. The Louisiana sex offender statute, as applied to Mr. Robinson, violates the Equal Protection Clause and unlawfully deprives him of his liberty.

In addition to offending due process, imprisoning Mr. Robinson for failure to pay the fees associated with registration and notification compliance, without determining whether he is financially able to pay for them, denies in equal protection of the laws. In *Bearden v. Georgia*, the Supreme Court held that a trial court's imprisonment of an indigent defendant for failure to pay a fine, without determining whether the defendant made "bona fide" attempts to pay the fine or whether adequate alternative methods of punishing the defendant were available, violated the Equal Protection Clause of the Fourteenth Amendment as well as substantive Due Process protections. 461 U.S. 660, 672-73 (1983). The Supreme Court reasoned that if the defendant made bona fide, reasonable efforts to pay the fine or restitution but could not do so through no fault of his own, depriving him of his conditional freedom simply because he could not pay the fine would be contrary to the fundamental fairness required by the Fourteenth Amendment.

This follows from the principle that the Equal Protection Clause does not tolerate disparate treatment of criminal defendants based solely on their economic status. The United States Supreme Court has repeatedly struck down regimes that endangered an individual's liberty based solely on their inability to pay fines and fees. *See Griffin v. Illinois*, 351 U.S. 12 (1956) (a state cannot deny appellate review to defendants unable to afford a transcript); *Williams v. Illinois*, 399 U.S. 235 (1970) (a state may not imprison a defendant beyond the statutory maximum based solely on his inability to pay a fine); *Tate v. Short*, 401 U.S. 395 (1971) (a state

may not impose a fine as a sentence and then automatically convert it to jail time based upon the defendant's inability to immediately pay the fine).

On January 13, 2017, the Louisiana Supreme Court, relying on *Bearden* and its progeny, ruled that individuals cannot be punished for failing to register in accordance with the sex offender statute when this failure is solely due to their inability to pay the costs associated with registration and notification compliance. *State v. Jones*, 206 So. 3d 871 (2017).[5] The Louisiana Supreme Court explained:

> In the event that defendant is found to be indigent, the trial court is ordered to reconsider its ruling denying the motion to quash in light of *Bearden v. Georgia*, 461 U.S. 660, 672, 103 S.Ct. 2064, 2073, 76 L.Ed.2d 221 (1983) (only if convict "willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay," could state punish him therefor with imprisonment). See also State v. Jones, 15 -0500, pp. 1-7 (La. App. 5 Cir. 12/23/15), 182 So. 3d 1218, 1223-26 (Wicker, J., dissenting). In addition, in the event that defendant is determined to be indigent and entitled to relief under Bearden, he should be given the opportunity to withdraw his guilty plea.

*State v. Jones*, 206 So. 3d at 871-72.

Plaintiff has made bona fide efforts to comply with the sex offender registration statute. He has paid the annual registration fees and the newspaper publication fee. He has attended every meeting required of him and has completed the portions of registration not attached to fees. If he were a wealthy person, Mr. Robinson would not have this problem.

Yet, despite these bona fide efforts, Mr. Robinson was informed by NOPD that he would be arrested on May 11, 2018 if he was unable to come up with the money required for postcard notification compliance. Plaintiff's financial situation remains unchanged. NOPD is well aware of Plaintiff's financial situation and of his inability to pay. NOPD plans to issue a warrant for

---

[5] In *Jones*, a registrant pled guilty to failure to register and appealed his conviction on the grounds that his failure to register was the result of his inability to pay the costs associated with registration and notification. The Louisiana Supreme Court ruled that if Mr. Jones' failure to register was due to his indigency, his case should have been dismissed by the trial court.

Plaintiff's arrest on May 11, 2018 despite their knowledge that he is indigent and that he has made bona fide efforts to comply.

Pursuant to *Bearden* and its progeny, it is clear that Plaintiff's Fourteenth Amendment rights would be violated if he were arrested for failure to register due to his inability to pay. The arrest and imprisonment of Mr. Robinson, solely for his status as an indigent registrant, violates the Fourteenth Amendment.

### c. The arrest of Mr. Robinson, for failure to register, would be unlawful because there is no probable cause for his arrest.

Individuals have the right to be free from unlawful arrest and detention. Any violation of these constitutionally protected rights can be grounds for suit under 42 U.S.C. §1983. To establish a constitutional claim for false arrest, a plaintiff must prove that the police officer lacked probable cause to arrest him. *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 1991). Police officers are required to make a determination of probable cause before any significant pretrial restraint of liberty. *Duckett v. Cedar Park*, 950 F.2d 272 (5th Cir. 1992). Probable cause is determined based upon whether, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested had committed or was committing an offense. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

In determining the presence or absence of probable cause, the totality of circumstances surrounding the arrest must be examined. *U.S. v. Maslanka*, 501 F. 2d 208 (5th Cir. 1974). Often police stop someone on suspicion of stealing a car, perhaps because a car of similar make, model and color was recently reported stolen. However, upon questioning the driver and learning that the automobile is registered to him, there is no probable cause to arrest him for theft. Similarly, when someone like the plaintiff has complied with most but not all of the sex offender registration requirements, and police learn that his non-payment of the remaining fees is not

willful, there is no probable cause for his arrest.  In each the totality of the circumstances does not support probable cause.

*Bearden* and its progeny prohibit the punishment of an indigent registrant solely based on his inability to pay the total fees associated with registration and notification compliance, if he has made bona fide efforts to comply. An indigent registrant, therefore, is not committing the crime of failure to register if he has made bona fide efforts to comply with the statute, but is unable to pay the full amount of fees through no fault of his own. NOPD is aware of this constitutional mandate not to detain indigent registrants who have made bona fide efforts to comply with registration and notification requirements, and is required to comply with it.

NOPD has actual knowledge that Plaintiff is unable to comply with registration and notification requirements because of his indigency and as such, it cannot deprive Mr. Robinson of his liberty. Mr. Robinson has done everything NOPD has asked of him, including attending every scheduled meeting. His only noncompliance is his failure to pay the fees associated with the required postcard notifications. NOPD is also aware of Mr. Robinson's indigency and that his noncompliance is not intentional. This knowledge obviates probable cause for Plaintiff's arrest because NOPD has actual knowledge that no crime has been committed. In the absence of probable cause, Mr. Robinson's arrest would be unlawful. Imprisoning Mr. Robinson would be unconstitutional given the facts of his situation.

### d. Courts have granted injunctive relief for the imposition of wealth-based detention schemes.

A number of courts have invalidated wealth-based schemes that result in the imprisonment of individuals solely because of their indigency. These cases underscore this Court's duty to uphold Plaintiff's Due Process and Equal Protection rights under the present scheme. *See Pugh v. Rainwater*, 572 F.2d 1053 (5th Cir.1978) (en banc) ("At the outset we accept the principle that imprisonment solely because of indigent status is invidious

discrimination and not constitutionally permissible."); *Barnett v. Hopper*, 548 F.2d 550, 554 (5th Cir.1977) ("To imprison an indigent when in the same circumstances an individual of financial means would remain free constitutes a denial of equal protection of the laws."), *vacated as moot*, 439 U.S. 1041 (1978); *Frazier v. Jordan*, 457 F.2d 726, 727 (5th Cir.1972) (finding alternative sentencing scheme, that is, $17 dollars or 13 days in jail, unconstitutional as applied to indigent defendants who, by definition, could not receive non-jail option).

In *Cooper v. City of Dothan*, the court issued a temporary restraining order on Fourteenth Amendment grounds where a post-arrest detention scheme was premised upon a secured bond system that failed to account for indigency. No. 1:15-CV-425, 2015 U.S. Dist. LEXIS 78813 (M.D. Ala. Jun. 18, 2015). Plaintiff alleged that the City's arrest and detention practices resulted in the confinement of individuals solely due to their poverty, which violated their Fourteenth Amendment's Due Process and Equal Protection rights. *Id.* The court highlighted long standing case law "that establishes the unconstitutionality of a pretrial detention scheme whereby indigent detainees are confined for a period of time solely due to their inability to pay. *Id.* at 3 (citing *Pugh*, 572 F.2d at 1057. The court relied on the constitutional principles espoused in *Pugh* and its progeny to find that plaintiff would likely succeed on the merits of his challenge against the City of Dothan, and should therefore be granted injunctive relief. *Id.* at 4 (citing *Pierce v. City of Velda City*, No. 4:15-cv-570-HEA, 2015 U.S. Dist. LEXIS 176261 (E.D. Mo. June 3, 2015) (issuing a declaratory judgment stating that the Fourteenth Amendment does not allow holding someone "in custody after arrest because the person is too poor to post a monetary bond. If the government generally offers prompt release from custody after arrest upon posting a bond . . . it cannot deny prompt release from custody to a person because the person is financially incapable of posting such a bond"). Moreover, the court explained that Mr. Cooper would have to remain detained pending his appearance as a result of his inability to pay, making his threat of injury immediate and irreparable. *Cooper*, 2015 U.S. Dist. LEXIS, at *5.

In *Rodriguez v. Providence Community Corrections, Inc.*, the court found plaintiffs were likely to succeed on the merits of their Fourteenth Amendment claim regarding failure to inquire into indigency prior to jailing probationers for nonpayment of court costs. 155 F.Supp.3d 758 (M.D. Ten. 2015). The court held that the plaintiffs would suffer irreparable constitutional harm in the absence of an injunction. *Id.* at 767.

The equal protection principles in *Pugh* and its progeny apply with equal force to Mr. Robinson and other indigent sex offender registrants. Mr. Robinson's freedom is being conditioned upon his financial resources. Mr. Robinson's status as a sex offender, however, should not lessen his rights under the equal protection clause. This Court should enjoin enforcement of the wealth-based detention scheme contemplated before this Court, as applied to Mr. Robinson, just as many other courts have done to unconstitutional detention schemes.

## B. THE REMAINING PRELIMINARY-INJUNCTION FACTORS FAVOR MR. ROBINSON

If the Court determines that Plaintiff is likely to succeed on the merits of his Fourteenth Amendment claims, a preliminary injunction or TRO is warranted. *See Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("Because the plaintiffs have established a substantial likelihood of success on their free speech and [due process] claims, there appears to be no issue as to the existence of the remaining preliminary injunction factors."). The three remaining factors – (1) irreparable harm to Plaintiff, (2) harm to others, and (3) the public interest – all weigh in Plaintiff's favor.

### a. Irreparable Harm

If the Court finds that it is likely unconstitutional to enforce Louisiana's sex offender notification requirements against Mr. Robinson, then the Court must also find that such enforcement would likely cause irreparable harm. Fifth Circuit precedent holds that when a law violates or impairs a constitutional right, there is a substantial threat of irreparable injury.

*See Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (holding that threatened or actual violation of the right to privacy constitutes threat of irreparable harm), *quoting Elrod v. Burns*, 427 U.S. 347, 373, 49. Here, Mr. Robinson will suffer irreparable harm if immediate injunctive relief is not granted. Not only will his due process and equal protection rights be violated, he will be arrested and imprisoned based solely on his indigent status.

The Supreme Court has made clear that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute" that violates the individual's constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

> [W]here threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat – for example, the constitutionality of a law threatened to be enforced…. [W]e did not require, as a prerequisite to testing the validity of the law in a suit for injunction, that the plaintiff bet the farm, so to speak, by taking the violative action.

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (original emphasis).

Here, Mr. Robinson faces physical custody as well as loss of his housing should he not be granted immediate injunctive relief.

### b.  Harm to Others

Plaintiff has shown a likelihood of success on the merits of his claims asserting an imminent threat of unconstitutional arrest and prosecution by Defendants, no harm to Defendants or others justify withholding injunctive relief.  Further, to the extent state would argue that there is a harm suffered by Mr. Robinson's inability to complete his notification requirements, incarcerating Mr. Robinson does not further the end of achieving compliance.  The State is in no way harmed if it is enjoined from arresting Mr. Robinson.

### c.  The Public Interest

The final factor is whether the public interest will be served by an injunction. Again, Plaintiff's likelihood of success on the merits of his claims largely disposes of the public-interest

factor. The Fifth Circuit has held that where laws violate a constitutional right, "the public interest is not disserved by an injunction preventing its implementation." *Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 951 (S.D. Miss. 2014), *quoting Opulent Life Church*, 697 F.3d 279, 298 (5th Cir. 2012). In this case, the public-interest factor weighs in favor of preliminary injunctive relief because, as demonstrated above, "a constitutional violation is likely." Further, the public would be negatively impacted by the unconstitutional arrest and detention of Mr. Robinson at taxpayer expense.

    **D.**    **The Plaintiff's indigence and the public interest mitigate in favor of waiving the bond requirement.**

Plaintiff requests that preliminary relief be granted without security because Plaintiffs seek to enforce fundamental rights in which there is a substantial public interest. *See Elliott v. Kieswetter*, 98 F.3d 47, 60 (3rd Cir. 1996) (court may waive bond requirement of Fed. R. Civ. P. 65(c) when balance of equities weighs overwhelmingly in favor of party seeking injunction); *Temple Univ. v. White*, 941 F.2d 201, 220 (3rd Cir. 1991) (district court waiver of bond was affirmed where the plaintiff hospital had "pursued a course of litigation clearly in the public interest, i.e., it seeks to preserve its role as a community hospital serving a disproportionate share of low income patients"); *Pharmaceutical Soc. of State of New York, Inc. v. New York State Dept. of Social Services*, 50 F.3d 1168, 1175 (2nd Cir. 1995) (affirming approval of bond waiver).

## CONCLUSION AND RELIEF REQUESTED

Based on the foregoing, Plaintiff respectfully requests that this Court enter a temporary restraining order and/or preliminary injunction enjoining the imminent arrest of Mr. Robinson because it violates Plaintiff's substantive Due Process and Equal Protection rights, is fundamentally unfair, and violates Plaintiff's procedural Due Process rights.

The balance of harms weighs heavily in Plaintiff's favor because Louisiana has deprived him of equal protection under the law. An injunction would not harm Louisiana and does not go against the purpose of the sex offender registration law – to protect communities, aid law enforcement in investigating sex offenders, and enable the quick apprehension of sex offenders. *See State ex rel. Olivieri v. State*, 779 So.2d 735 (2001). In fact, Plaintiff's actions satisfy the legislative goals of the sex offender registration statute because Plaintiff has ensured NOPD knows where he is at all times; Plaintiff has checked in with NOPD when required. Plaintiff's only noncompliance is his failure to pay the fees associated with notification requirements due solely to his status as an indigent registrant, which does not disrupt the main aims of the statute. Failure to pay the fines does not make communities any less safe or hinder law enforcement in investigating sex offenders. Finally, an injunction would serve the public interest because it would restore Plaintiff's constitutional rights as well as the rights of other indigent registrants in Louisiana.

For all of these reasons, Plaintiff respectfully requests that this Court (1) preliminarily enjoin Defendants from arresting him for failure to register without an indigency determination, as required by state and federal law, (2) issue an injunction against Defendants to prohibit the issuance of an arrest warrant for Plaintiff based on his failure to pay notification costs and, (3) issue an order to Defendants that any existing warrants for Plaintiff based on his failure to pay notification costs be recalled.

Filed:  May 9, 2018.

Respectfully submitted,


*/s/ Colin Reingold*
COLIN REINGOLD
La. Bar #33252
Orleans Public Defenders
2601 Tulane Ave, Suite 700
New Orleans, LA 70119
(504) 827-8220 (direct)
(504) 931-4866 (mobile)
creingold@opdla.org
Attorney for Plaintiff


 */s/ John Adcock*_____
JOHN ADCOCK
Louisiana Bar No. 30372
3110 Canal Street
New Orleans, LA 70119
(504) 233-3125 (work)
(504) 284-6327 (mobile)
(504) 308-1266 (fax)
Email:  jnadcock@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

On May 9, 2018, I e-filed the above document and all exhibits using the Court's ECF system which will send same-day e-notification to all counsel of record. I also emailed the filing, including all exhibits to: Colin Clark, Deputy Solicitor General, ClarkC@AG.Louisiana.gov; Emma Devillier, Assistant Attorney General, DevillierE@AG.Lousiana.gov; Adrienne Aucoin, Counsel for Louisiana State Police, Adrienne.aucoin@la.gov; Counsel for Louisiana State Police, Kathy Williams Kathy.Williams@la.gov, Rebecca Dietz, New Orleans City Attorney, rhdietz@nola.gov.


*/s John Adcock*____
John Adcock